**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JOE J. SALAZAR,

Plaintiff,

v.                                                    Civ.  No. 04-404 JH/WDS

ARTHUR HASSALL, BRYAN McOLASH,
SCOTT SPENCER, DEBRA GRIEGO,
DANETTE BURCH, JAMES C. JIMENEZ,
HAROLD FIELDS, JEFF VARELA,
individually and in their official capacities, and
NEW MEXICO DEPARTMENT OF FINANCE
AND ADMINISTRATION,

Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Currently before the Court are two motions filed by various defendants in this case: *Defendants Arthur Hassall, Bryan McOlash, Debra Griego, Danette Burch, James C. Jimenez, Harold Fields, and Jeff Varela's Motion to Dismiss Plaintiff's Claims Against Them* [Doc. No. 33], as well as *Defendant Scott Spencer's Motion to Dismiss Plaintiff's Claims Against Him* [Doc. No. 37].  After carefully considering the facts alleged in the Amended Complaint, the law and the arguments of the parties, the Court concludes that both motions should be granted in part and denied in part as further explained herein.

**FACTUAL AND PROCEDURAL HISTORY**

The facts of this case as alleged by Plaintiff in his amended complaint are as follows.

Plaintiff Joe J. Salazar ("Salazar"), an Hispanic male in his late 50's, is a former employee of the State of New Mexico, Department of Finance and Administration ("NMDFA").  Plaintiff began

his employment with the State of New Mexico in 1982, and he worked for NMDFA from March 2, 2002 until May 28, 2003, when his employment was terminated.

Defendants Harold Fields and James C. Jimenez are former or current Secretaries of the NMDFA who worked in that capacity during all or part of Salazar's tenure, though based upon the amended complaint it is unclear who was in office at the time his employment was terminated. Fields and Jimenez had responsibility for hiring, firing, and disciplining NMDFA employees. Defendant Danette Burch is the Deputy Secretary of NMDFA. Defendants Bryan McOlash and Debra Griego were Directors of the Administrative Services Division of the NMDFA who supervised Salazar's employment. Salazar alleges that Defendant Arthur Hassall is an employee of the NMDFA, but he does not allege in what capacity Hassall was employed. Defendant Scott Spencer is legal counsel to NMDFA. Defendant Jeff Varela is the Director of the New Mexico State Personnel Office, and according to the amended complaint he is responsible for affording New Mexico state employees timely post-termination hearings.

Salazar began his employment with NMDFA on March 2, 2002 as a deputy director of the Administrative Services Division ("ASD"), and in May of 2002 he was appointed acting director of ASD. In June of 2002, Hassall and Spencer "pro-actively solicit[ed] statements from employees at DFA that Plaintiff made personally offensive remarks to said employees." Amended Complaint at ¶ 15. Salazar does not deny making the remarks at issue. On June 24, 2002, Salazar was reprimanded for his remarks, and NMDFA suspended his supervisory authority for thirty days. Fields told Salazar that he would be reevaluated after thirty days, but that evaluation did not occur. Salazar remained without supervisory authority, and it appears from the amended complaint that he returned to his position as deputy director of ASD. On June 25, 2002, Salazar filed a complaint against

Hassall and Spencer, alleging that they had subjected him to a racially hostile work environment (presumably by soliciting statements from other NMDFA employees). Salazar contends that Fields failed to properly investigate his complaint.

On July 11, 2002, McOlash appointed Salazar as the NMDFA audit coordinator but did not give Salazar the managerial authority he needed. Without that authority, Salazar was unable to compel other NMDFA employees to perform their assigned tasks relating to the audit work. When Salazar complained, McOlash refused to assist him and accused Salazar of attempting to shift the blame to others for his own inability to complete his audit work. Salazar worked overtime and on December 15, 2002, Salazar completed his assignment on time and submitted the audit paperwork.

On January 1, 2003, Griego replaced McOlash as Director of ASD and became Salazar's direct supervisor. On January 23, 2003, McOlash evaluated Salazar's work performance, rating him as "unsatisfactory"; this evaluation was almost two months overdue. McOlash's evaluation was unfair, as Salazar had completed his assigned audit work in a timely fashion. Salazar filed an objection to this evaluation, which Jimenez[1] rejected without an investigation and without explanation to Salazar. On February 9, 2003, Griego gave Salazar a performance appraisal and a development plan as a deputy director without the necessary supervisory authority; in addition, Jimenez did not review the development plan.

On February 21, 2003, Salazar filed both a charge of discrimination with NMDFA's EEOC officer, as well as a grievance with Burch regarding his performance appraisals by McOlash and Griego. In the grievance, Salazar alleged that the appraisals were defamatory and the result of racial

---

[1] Plaintiff does not allege whether at this point in time Jimenez had replaced Fields as Secretary of the NMDFA, or if Jimenez was in another position.

hostility by Hassall, Spencer, Griego, and McOlash.  Those four individuals submitted written responses to the grievance, which Salazar alleges to be defamatory and inaccurate.  Salazar was not given an opportunity to respond to their comments, and on March 18, 2003, Burch denied Salazar's grievance.  On March 28, 2003, Salazar's job classification was changed to "financial coordinator advanced" without a corresponding change in his job assignments and without a new performance and development appraisal plan.  Then, on April 17, 2003, Salazar filed a formal grievance with Jimenez (who apparently was working in the position of Secretary at this point).

On May 14, 2003, Griego unfairly assessed Salazar's work performance as "unsatisfactory," and erroneously evaluated him as a deputy director, rather than as a "financial coordinator advanced." It was an interim evaluation and Jimenez did not review it before it was presented to Salazar, who never received a final evaluation.  That same day, on behalf of NMDFA Griego gave Salazar a Notice of Contemplated Action informing him that NMDFA would seek to dismiss Salazar from his employment.  The Notice lists various reasons for Salazar's termination.  At no time prior to May 14, 2003, had any of the Defendants informed Salazar of the possibility that he would be dismissed from his employment.  Salazar did not respond to the Notice of Contemplated Action, and no pre-termination hearing took place.

On May 28, 2003, Salazar's employment was terminated through a Notice of Final Action. No post-termination hearing took place.  On June 26, 2003, Salazar appealed this action to the State Personnel Board.  In addition, on June 9, 2003, he filed a complaint with the EEOC alleging discrimination on the basis of race and age.  After Salazar's employment was terminated, NMDFA hired a younger, white employee to replace him.

On April 21, 2004, Salazar filed his First Amended Complaint alleging claims for conspiracy

to violate his civil rights under 42 U.S.C. § 1985 (Count I); denial of his Constitutional rights to substantive and procedural due process, in violation of 42 U.S.C. § 1983 (Count II); discrimination on the basis of race in violation of Title VII as well as his Constitutional right to equal protection under 42 U.S.C. § 1983 (Count III); discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII, and the New Mexico Human Rights Act ("NMHRA") (Count IV); and prima facie tort (Count V).

On February 22, 2005, this Court entered a Memorandum Opinion and Order dismissing Salazar's claims against NMDFA under Counts I and II of the Amended Complaint on the grounds that NMDFA is not a "person" who may be held liable under 42 U.S.C. §§ 1983 and 1985. The Court also dismissed Salazar's claim of prima facie tort against NMDFA because it has sovereign immunity under the New Mexico Tort Claims Act. Finally, the Court granted the individual defendants' motion to dismiss Salazar's claims under Title VII and the NMHRA, finding that Salazar had failed to exhaust his administrative remedies. Therefore, Salazar's remaining claims are as follows: (1) claim for conspiracy to violate civil rights under Section 1985 against the individual defendants in their individual and official capacities; (2) claim for violation of his rights to substantive and procedural due process pursuant to Section 1983 against the individual defendants in their individual and official capacities; (3) claim for race discrimination in violation of Title VII and Section 1981 against NMDFA; (4) claim for race discrimination in violation of the equal protection clause pursuant to Section 1983 against the individual defendants in their individual and official capacities; (5) claim for age discrimination against NMDFA in violation of the ADEA and the New Mexico Human Rights Act; (6) claim for age discrimination in violation of the equal protection clause pursuant to Section 1983 against the individual defendants in their individual and official capacities;

and (7) claim for prima facie tort against the individual defendants in their individual and official capacities.

## DISCUSSION

I. **COLLECTIVE DEFENDANTS' MOTION TO DISMISS**

    A.     **Constitutional Claims Against Defendants in Their Official Capacities**

A cause of action under Section 1983 requires the deprivation of a civil right by a "person" acting under color of state law. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989). As this Court held in its Memorandum Opinion and Order filed on February 22, 2005, the same analysis applies to conspiracy claims brought under 42 U.S.C. § 1985. However, a government employee may be held liable in his official capacity for injunctive relief under Section 1983. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996). Here, with regard to his constitutional claims in Counts II, III, and IV of the amended complaint, Salazar has asked for both money damages and a permanent injunction reinstating him to his job with NMDFA.

Accordingly, with the exception of Salazar's equitable claim for injunctive relief reinstating him to his employment with NMDFA, all of Salazar's legal claims against the individual defendants in their official capacities brought pursuant to 42 U.S.C. §§ 1983 and 1985 will be dismissed.

    B.     **Constitutional Claims Against Defendants in Their Individual Capacities**

The individual defendants contend that all of Salazar's constitutional claims should be dismissed under Rule 12(b)(6) because they have qualified immunity against such claims. Further, the individual defendants argue that Salazar has failed to adequately alleged that each of them deprived him of his constitutional rights.

Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, a defendant may also present this defense on a motion to dismiss. Asserting a qualified immunity defense through a motion to dismiss under Rule 12(b)(6), however, "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). The Court must accept all well-pleaded allegations of the amended complaint as true and consider them "in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). In reviewing a Rule 12(b)(6) motion in the context of qualified immunity, a district court should not dismiss a complaint "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (citing *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001)). Although the Tenth Circuit had previously employed a heightened pleading standard in qualified immunity cases, it has now abolished that requirement. *See Currier*, 242 F.3d at 916.

In evaluating claims of qualified immunity on a motion to dismiss, the Court must first determine whether the individual defendants' actions, as alleged in the amended complaint, violated a constitutional or statutory right.[2] *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); *Denver Justice and Peace Committee, Inc. v. City of Golden*, 405 F.3d 923, 928 (10th Cir. 2005). If the Court answers that question affirmatively, it then must determine whether the right allegedly violated has been "clearly established in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what

_____

[2] Because a motion to dismiss under Rule 12(b)(6) tests the sufficiency of the amended complaint, the Court declines to consider the exhibits that Salazar included with his responses to the two motions to dismiss presently before the Court.

he is doing violates that right." *Saucier,* 533 U.S. at 201 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987)).

### 1.    Procedural Due Process

The essential elements of procedural due process are notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487 (1985). The Due Process Clause does not dictate any single model, method, or form of procedure.  *Scroggins v. Kansas*, 802 F.2d 1289 (10th Cir. 1986) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 483, 102 S. Ct. 1883 (1982)). While the opportunity for a pre-termination hearing is necessary, it need not be elaborate. *Loudermill*, 470 U.S. at 545.  Rather, it need only be an initial check against mistaken decisions. *Id.* The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the evidence, and an opportunity to present his side of the story.  *Id.* at 546.

In this case, Salazar alleges that Defendants deprived him of both a pre- and post-termination hearing in violation of his procedural due process rights.  Defendants argue, in turn, that Salazar had the opportunity to participate in a pre-termination hearing but failed to avail himself of that right, and therefore he has no procedural due process claim.  The Defendants' position overlooks that there are two components to a claim for procedural due process, and that a public employee is entitled to process both before and after his termination.

Salazar attached the May 14, 2003, Notice of Contemplated Action ("the notice") as Exhibit 1 to his original complaint, and he makes specific references to it in his amended complaint.[3]  *See* Am.

---

[3] As a general rule, in deciding a Rule 12(b)(6) motion a federal court may only consider facts alleged within the complaint.  *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).  Because both

Cmplt. at ¶¶ 43-47, 57.  The notice sets forth nine paragraphs asserting reasons for the contemplated

dismissal followed by this statement: "You have seven calendar days from service of this notice to

respond in writing to the notice or to request an opportunity for an oral response."  Salazar admits

that he did not respond to the notice, and alleges that the vagueness of the notice prevented him from

doing so.  *Id*. at ¶ 57.  However, review of the notice demonstrates that it is sufficiently concrete such

that Salazar could have framed a response.  Among the factors in support of termination that the

notice lists are making offensive remarks for which Salazar was reprimanded, unsatisfactory work

appraisals, blaming others for his own failures, hostile attitude toward others, questioning authority,

and filing a dubious worker's compensation claim.  Yet, Salazar neither responded to the notice nor

requested additional time to do so.  Having failed to avail himself of the process offered to him,

Salazar may not now be heard to complain that he was deprived of pre-termination due process.

However, in his amended complaint Salazar also alleges—and these allegations must be

accepted as true on a motion to dismiss—that he filed an appeal of his termination to the State

Personnel Board but has been denied a post-termination hearing.  The pre-determination due process

requirements set forth in *Loudermill* rest partially on the availability of a full post-termination hearing

under applicable state law.  *Loudermill*, 470 U.S. at 546, 105 S.Ct. 1487; *Langley v. Adams County,

Colo.*, 987 F.2d 1473, 1480 (10th Cir.1993) ("Under *Loudermill*, the adequacy of pre-termination

procedures must be examined in light of available post-termination procedures."); *Calhoun v. Gaines*,

982 F.2d 1470, 1476 (10th Cir. 1992) (holding that "*Loudermill* established that some form of

pretermination hearing, plus a full-blown adversarial post-termination hearing," are required when

---

Salazar and Defendants have referred to this document in their briefing, it is apparent that it is
central to the claim and the its authenticity is undisputed, and therefore the Court may consider it
without converting the motion to dismiss to one for summary judgment.

a property interest in continued employment is at stake).  "A 'full post-termination hearing' is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses." *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994) (citations omitted).

Because under the amended complaint Salazar has not received a timely post-termination hearing, it appears that he has stated a claim for denial of his procedural due process rights. However, as Defendants correctly point out, there are no allegations in the amended complaint to support this particular claim against Defendants Hassall, McOlash, Spencer, Griego, Burch, Jimenez, or Fields.  In fact, Salazar pleads no facts which would support an inference that any of those individuals—none of whom work in the State Personnel Office—interfered with his procedural due process rights in any way.  Therefore, each of these Defendants has qualified immunity, and Salazar's procedural due process claim against each of them in their individual capacities will be dismissed. However, because Salazar has pled that he has been denied a timely post-termination hearing and that Defendant Varela is the state employee responsible for providing him with that hearing, Salazar's due process claim against him survives the motion to dismiss.

## 2.    Substantive Due Process

Assuming that Plaintiff had a property or liberty interest deserving of substantive due process protection under the Fourteenth Amendment[4], substantive due process requires that his termination not be arbitrary, capricious, or without a rational basis. *Tonkovich v. Kansas Bd. Of Regents*, 159 F.3d 504, 528 (10th Cir. 1998).

Though his amended complaint is inartfully drafted, Salazar has alleged that he was

---

[4] The parties appear to agree that as a long-term employee of the State of New Mexico, Salazar had a property interest in his employment.

10

reprimanded and that his employment was terminated because of his race and his age, *see* Am. Cmplt. at ¶ ¶ 15, 17, that he was treated differently than similarly situated non-Hispanic and younger employees, *id*. at ¶ ¶ 65, 86, 89, and 94, and that the reasons for his discipline were false and therefore a mere pretext for discrimination. *Id*. at ¶ ¶ 26, 34, 42, 56, and 83. Furthermore, though the allegations relating to the individual defendants are not particularly well-pled, the Court finds that at this stage of the litigation, the allegations against Defendants Hassall, McOlash, Spencer, Griego, Burch, Jimenez, and Fields are sufficient to support Salazar's claims against them for violation of his substantive due process rights. These allegation of his amended complaint state a claim for violation of Salazar's rights not only under the due process clause, but also under Title VII and the ADEA. It is clearly established law that one may not discriminate against an employee on the basis of his race and age, and therefore Defendants Hassall, McOlash, Spencer, Griego, Burch, Jimenez, and Fields are not entitled to qualified immunity on this claim. However, Defendant Varela is entitled to qualified immunity on this claim, as Salazar has not alleged that Varela has discriminated against him in any way. Accordingly, Salazar's substantive due process claim against Varela in his individual capacity will be dismissed.

### 3.   Equal Protection

The equal protection clause is triggered when the government treats someone differently than another who is similarly situated. *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249 (1985)). The equal protection clause prohibits discrimination not only against victims within an identified classification or group, but also where the plaintiff alleges an element of intentional or purposeful discrimination so as to invoke the clause to protect an individual claim.

11

*Bartell v. Aurora Public Schools*, 263 F.3d 1143, 1148 (10th Cir. 2001). "Unless a legislative classification or distinction burdens a fundamental right or targets a suspect class, courts will uphold it if it is rationally related to a legitimate end." *Tonkovich*, 159 F.3d at 532. (internal citation omitted). If a fundamental right is not at stake and a plaintiff is not a member of a suspect class, he must show that he was treated differently than others who were similarly situated, and that the different treatment lacked a rational basis. *Id.*  Because age is not a suspect class under the Equal Protection Clause and because Salazar alleges no action which injured his fundamental rights, the state may discriminate on the basis of age if the age classification is rationally related to a legitimate state interest. *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996); *see also Kimel v. Florida Board of Regents*, 528 U.S. 62, 83, 120 S.Ct. 631 (2000) ("age is not a suspect classification under the Equal Protection Clause").

This claim is subject to the same analysis as the due process claim discussed above.  Salazar has alleged sufficient facts at this stage of the litigation to sustain a claim for age and race discrimination in violation of the ADEA and Title VII, as well as the equal protection clause, and therefore Defendants Hassall, McOlash, Spencer, Griego, Burch, Jimenez, and Fields are not entitled to qualified immunity.  However, because Salazar has failed to allege that Defendant Varela violated his right to equal protection, Varela does have qualified immunity and Salazar's claim against him in his individual capacity will be dismissed.

### C.     Claim Against Defendants Under the New Mexico Tort Claims Act

In Count V of his amended complaint, Salazar asserts that the individual defendants are liable for prima facie tort.  The individual defendants, in turn, contend that under the NMTCA, they are immune to this claim.

Liability of public employees acting within their scope of duty is governed by the New Mexico Tort Claims Act ("NMTCA"), NMSA 1978, §§ 41-4-1 to -27 (1976). The NMTCA "delimits the scope of liability for government entities and their employees by: (1) retaining immunity for torts not waived by the NMTCA; and (2) waiving immunity and recognizing liability, subject to certain protections, for employees acting within their scope of duty." *Celaya v. Hall*, 2004-NMSC-005, ¶ 8, 135 N.M. 115 (citations omitted). The TCA specifically provides that it is "the exclusive remedy ... for any tort for which immunity has been waived." *See* § 41-4-17(A) (1982).

In order to retain the immunity provided by the NMTCA, the public employee must have been acting within the scope of his duties. As explained by the New Mexico Court of Appeals, "[u]nder Section 41-4-4(D), the State is only liable for its employees' negligence when those employees are acting in their scope of duty. Thus, the State's liability is similar to that of a private employer under the doctrine of respondeat superior." *Vigil v. State Auditor's Office*, 2005-NMCA-96 ¶ 12, 138 N.M. 63. The official/individual capacity distinction that applies to claims brought under Section 1983 has no application to tort claims governed by the NMTCA. *Id.* at ¶ 8.

In *Risk Mgmt. Div. v. McBrayer*, 2000-NMCA-104, ¶¶ 8, 17, 129 N.M. 778, the New Mexico Court of Appeals examined the meaning of the "scope of duties" clause in detail, concluding that it represents a departure from the "scope of employment" standard and extends beyond officially authorized or requested acts. In *McBrayer*, a New Mexico State University instructor assaulted a student who had visited the instructor's apartment to obtain class assignments. Although of course the attack was unauthorized, the court identified a nexus between the instructor's authorized teaching duties and his after-class interaction with a student seeking class assignments. *Id.* ¶¶ 3- 4. The court concluded that the unauthorized attack might fall within the instructor's "scope of duties" as that term

13

is used in the NMTCA. "Because it appears that [the instructor] used this authorized duty as a subterfuge to accomplish his assault, we find that a reasonable fact finder could determine that his actions were within the scope of the duties that NMSU requested, required or authorized him to perform." *Id.* ¶ 20.

In *Celaya*, 2004-NMSC-005, ¶ 22, 135 N.M. 115, 85 P.3d 239, the New Mexico Supreme Court observed that the statute defines "scope of duties" as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." NMSA 1978, § 41-4-3(G). The Court clarified that scope of duty is not limited to acts "officially requested, required or authorized because, contrary to legislative intent, it would render all unlawful acts, which are always unauthorized, beyond the remedial scope of the TCA." *Celaya*, 2004-NMSC-005, ¶ 25, 135 N.M. 115 (citing *McBrayer*, 2000-NMCA-104, ¶ 20, 129 N.M. 778). "Thus, the TCA clearly contemplates including employees who abuse their officially authorized duties, even to the extent of some tortious and criminal activity." *Id.*

In light of the foregoing authorities, this Court concludes that, under the facts as alleged by Salazar in the amended complaint, each of the individual defendants was acting in the scope of his or her duties at the time of the events in question. Although Salazar alleges that they each violated his statutory and constitutional rights, his allegations clearly indicate that they did so while performing their duties as state employees, not during a frolic that took them far afield from their work obligations. Therefore, the NMTCA applies to all the individual defendants. Because the statute does not waive immunity for prima facie tort, that claim will be dismissed in its entirety.

## II.   SPENCER'S MOTION TO DISMISS

### A.   <u>Did Spencer Have a Duty to Salazar?</u>

14

Spencer argues that, as an attorney for NMDFA, under the rule announced in *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 750 P.2d 118 (1988), he had no duty to Salazar with regard to actions taken in the course of his employment and therefore may not be held liable.  In *Garcia*, the plaintiff had sued a local school board and its members in their official and individual capacities for violation of his federal civil rights.  *Id.* at 759.  The case went to trial, and during a conference on jury instructions, the plaintiff agreed to drop his claims against the board members in their individual capacities.  *Id.* at 759-60.  In doing so, the plaintiff relied at least in part on statements by defense counsel that the board would not assert an Eleventh Amendment immunity defense to the claims brought against its members in their official capacities.  After a jury verdict in favor of plaintiff, the school board appealed and raised for the first time the defense of qualified immunity, upon which it prevailed.  *Id.*  Plaintiff then sued the school board's law firm for fraud, negligent misrepresentation, promissory estoppel, and breach of contract.  *Id.* at 760.

The New Mexico Supreme Court affirmed dismissal of the plaintiff's claims against the law firm, noting that:

> A majority of jurisdictions do not hold attorneys liable for professional negligence to third party non-clients.  A duty of care toward non-clients has been found to exist only in those situations where the non-client was an intended beneficiary of the attorney's services, or where it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others. The two situations most productive of third party claims have been will drafting and examination of titles.

*Garcia*, 106 N.M. at 761 (internal citations omitted).   In finding that no duty was owed by the law firm to its client's adversary, the court also noted that:

> Historically, our court system has always been adversarial in nature. The role of the attorney therein is to represent and advocate a client's

15

> cause of action as vigorously as the rules of law and professional
> ethics will permit. For that reason an attorney's exclusive and
> paramount duty must be to the client alone and this duty cannot run
> to the client's adversary.

*Id.* at 761.

The Court finds that the reasoning of *Garcia v. Rodey* does not apply in this case. In *Garcia*, the opposing party sought to rely upon the adverse attorney's statements regarding positions his client would take in future stages of the litigation. In other words, he sought to impose a duty upon opposing counsel during the course of a formal adversarial proceeding. The court dismissed the opposing party's negligence claims against the lawyer, finding that he had no duty to the adverse party. That is entirely distinguishable from the situation presented here, where Salazar has alleged that Spencer was legal counsel for NMDFA, the agency for which Salazar worked. Although the amended complaint indicates that Spencer was involved in the efforts to terminate Salazar's employment, there were no formalized legal proceedings and therefore no clearly adverse party. Rather, this was a situation in which one or more supervisors in an organization evaluated, reprimanded, and terminated an employee, allegedly on the basis of illegal discrimination. For purposes of this motion to dismiss, the Court assumes those allegations to be true. That one of the members of that group happens to be an in-house lawyer does not automatically shield that individual from all liability for his alleged intentional acts of discrimination.

### B.    Constitutional Claims Against Spencer in His Official Capacity

For the same reasons discussed in Part I(A), *supra*, Spencer may not be held liable in his official capacity for constitutional torts under Section 1983 because he is not a "person" as defined by that statute.

**C.**     **Constitutional Claims Against Spencer in His Individual Capacity**

For the same reasons discussed in Part I(B), *supra*, with regard to his co-defendants Hassall, McOlash, Spencer, Griego, Burch, Jimenez, and Fields, defendant Spencer has qualified immunity against Salazar's claim for violation of his right to procedural due process, and that claim will be dismissed.  However, at this stage of the litigation Spencer does not have qualified immunity against Salazar's claims for substantive due process and equal protection.

**D.**     **Prima Facie Tort Claim Against Spencer**

For the same reasons discussed in Part I(C), *supra*, under the facts as alleged in the amended complaint Spencer was acting within the scope of his duties, and therefore under the NMTCA he is immune to liability for prima facie tort.  That claim against him will be dismissed.

**IT IS THEREFORE ORDERED** that:

(1)     *Defendants Arthur Hassall, Bryan McOlash, Debra Griego, Danette Burch, James C. Jimenez, Harold Fields, and Jeff Varela's Motion to Dismiss Plaintiff's Claims Against Them* [Doc. No. 33], is **GRANTED IN PART** and **DENIED IN PART**;

(2)     *Defendant Scott Spencer's Motion to Dismiss Plaintiff's Claims Against Him* [Doc. No. 37] is **GRANTED IN PART** and **DENIED IN PART**;

(3)     With the exception of Plaintiff's equitable claim for injunctive relief reinstating him to his employment with NMDFA, all of Salazar's legal claims against Defendants Hassall, McOlash, Spencer, Griego, Burch, Jimenez, Varela and Fields in their <u>official</u> capacities brought pursuant to 42 U.S.C. §§ 1983 and 1985 are **DISMISSED**;

(4)     Plaintiff's claims for violation of his right to procedural due process against Defendants Hassall, McOlash, Spencer, Griego, Burch, Jimenez, Fields, and Spencer in their <u>individual</u> capacities

17

are **DISMISSED**;

(5)     Plaintiff's claims for violation of his rights to substantive due process and equal protection

against Defendant Varela in his <u>individual</u> capacity are **DISMISSED**; and

(6)     Plaintiff's claim for prima facie tort (Count V) is **DISMISSED** in its entirety as to all

Defendants.


_____
**UNITED STATES DISTRICT JUDGE**